UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Nilsa Ramos

_____

Write the full name of each plaintiff.

-against-

Columbia University

_____

_____

Write the full name of each defendant. The names listed
above must be identical to those contained in Section I.

_____CV_____

(Include case number if one has been
assigned)

Do you want a jury trial?

☐ Yes    ☐ No

RECEIVED
SDNY PRO SE OFFICE
2024 AUG 16 PM 3:07

## EMPLOYMENT DISCRIMINATION COMPLAINT

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.    PARTIES

### A.   Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

Nilsa                          Ramos
First Name          Middle Initial          Last Name

434  E.  105 St   Apt 6A
Street Address

New York              N.Y              10029
County, City                State              Zip Code

646 544 4285        nilsarms45@gmail.com
Telephone Number        Email Address (if available)

### B.   Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:    Columbia University
                Name
                119 St Amsterdam Ave.
                Address where defendant may be served
                New York        N.Y        10029
                County, City        State        Zip Code

Defendant 2:    _____
                Name
                _____
                Address where defendant may be served
                _____
                County, City        State        Zip Code

Defendant 3:

_____
Name

_____
Address where defendant may be served

_____
County, City                State              Zip Code

## II.    PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

Columbia University URBS Blue Java
Name

119 st  Amsterdam Ave
Address

New York          N.Y          10027
County, City            State              Zip Code

## III.    CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☐  **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

   The defendant discriminated against me because of my (check only those that apply and explain):

   ☐  race: _____

   ☐  color: _____

   ☐  religion: _____

   ☐  sex: _____

   ☐  national origin: _____

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: _Puerto    Rican_

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: _1971_

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: _____

☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: _____

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

**B. Other Claims**

In addition to my federal claims listed above, I assert claims under:

☐ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☑ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ **Other** (may include other relevant federal, state, city, or county law):

_____

## IV.   STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- [ ] did not hire me
- [x] terminated my employment
- [ ] did not promote me
- [ ] did not accommodate my disability
- [ ] provided me with terms and conditions of employment different from those of similar employees
- [x] retaliated against me
- [x] harassed me or created a hostile work environment
- [ ] other (specify): _____

### B.  Facts        B Facts Continues

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

On Sept 8. 2021 I could not swipe into work when I spoke to my manager Donald Bartlett he asked if was vaccinated I told him that my appointment got canceled due to hurricane Ida I also told him that I had to see the doctor for my work related ankle injury flaring up and my knee he told me.

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V.    ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☐   Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge? _____

☐   No

Have you received a Notice of Right to Sue from the EEOC?

☑   Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice?   May 20 _____

When did you receive the Notice?   _____

☐   No

## VI.    RELIEF

The relief I want the court to order is (check only those that apply):

☐   direct the defendant to hire me

☑   direct the defendant to re-employ me

☐   direct the defendant to promote me

☐   direct the defendant to reasonably accommodate my religion

☐   direct the defendant to reasonably accommodate my disability

☑   direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here):

_____

_____

_____

_____

## VII.    PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass,
cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are
supported by existing law or by a nonfrivolous argument to change existing law; (3) the
factual contentions have evidentiary support or, if specifically so identified, will likely
have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Federal
Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I
understand that my failure to keep a current address on file with the Clerk's Office may
result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to
proceed without prepayment of fees, each plaintiff must also submit an IFP application.

08/16/2024
**Dated,**

*Nilsa Ramos*
**Plaintiff's Signature**

Nilsa
**First Name**

**Middle Initial**

Ramos
**Last Name**

434 E. 105 St  Apt 6A
**Street Address**

New York
**County, City**

New York   10029
**State**      **Zip Code**

646 544-4285
**Telephone Number**

nilsarms45@gmail.com
**Email Address (if available)**

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes    ☐ No

> If you do consent to receive documents electronically, submit the completed form with your
> complaint. If you do not consent, please do not attach the form.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

New York District Office
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 05/20/2024

**To:** Nilsa Ramos
434 E 105th Apt 6A
New York, NY 10029

Charge No: 520-2023-04632

EEOC Representative and email:    PAUL HOLCHAK
Investigator
paul.holchak@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By: Yaw Gyebi, Jr.
05/20/2024
Yaw Gyebi, Jr.
District Director



## Fw: Meeting on11/29/17
2 messages

**nilsarms@aol.com** <nilsarms@aol.com>
Reply-to: nilsarms@aol.com <nilsarms@aol.com>
To: nilsarms45@gmail.com <nilsarms45@gmail.com>

Thu, Nov 16, 2023 at 12:58 PM

Sent from AOL on Android

---- Forwarded Message ----
**From:** "nilsarms@aol.com" <nilsarms@aol.com>
**To:** "bennet.battista@1199.org" <bennet.battista@1199.org>
**Cc:** "sjw91@columbia.edu"
<sjw91@columbia.edu>, "vd2177@columbia.edu" <vd2177@columbia.edu>, "tc433@columbia.edu"
<tc433@columbia.edu>, "dk342@columbia.edu" <dk342@columbia.edu>, "jt2903@columbia.edu"
<jt2903@columbia.edu>, "nilsarms@aol.com" <nilsarms@aol.com>
**Sent:** Mon, Jan 8, 2018 at 7:06 PM
**Subject:** Meeting on11/29/17

I just wanted to speak up about how the meeting on 11/29/17 took place it was handled very unprofessionally first I was contacted by Martha while I was working on the register and had a line at 8:30am to tell me that I had a meeting at 10:00am with Dietrich from H.R I told her I would go to the meeting as long as I could find a delegate Martha told me that Kim Nesmith knows about the meeting i told her that I'm suppose to choose the delegate of my choice and that if I could not find one that I would have to change the date of the meeting.I was not even given time or told in time to prepare for the meeting.I then was trying to contact Dietrich i left a message then I called Uris Donald picked up i told him I needed to change the meeting date he told me to go to wein hall to tell Dietrich in person I texted Don to see if he could give me Dietrich cell number so I could call or text her but he did not reply.So while I was in the register Kim Nesmith comes in and tells me that Mr.Bennett was in the Lenfest lounge waiting for me for the meeting when he did not even contact me to tell me about the meeting or even that he was on campus he did not even meet with me before hand to discuss the matter we did speak a week before  about the change but I still was told at last minute about the meeting on 11/29/17 In this meeting when we got to Wein Hall present was Dietrich Alford Justine Sacks Donald Bartlett Bennet Battista Kim Nesmith Steven Tucker myself Nilsa Ramos and Judith Melendez as my witness due to not being able to find a delegate of my choice.Dietrich said who wanted to start off the meeting and Donald stated that he was moving me to the new unit at Uris not due to my work performance or anything I did wrong so I asked why was I being removed he did not respond to my question he just started saying that there would be more support there that he and Martha would be there that there would be porters that he knew that was an issue for me when I was at lenfest and that there would be more help.I then said the only help I asked for at lenfest was either to come in earlier on Tuesday,Wednesday,and Thursdays at 6:30 am to be able to make the breakfast sandwiches due to the fact  I Only had one day on Mondays that I was in at 6am to 4pm  to make the sandwiches and  set up when the sandwiches ran out the rest of the week im in at 7:00am and lenfest now opens at 8:00am and I Only have one hour to set up with in that hour i have to replenish the pastry make four urns of coffee make one pot of oatmeal set up condiment for the oatmeal.set up the lounge with the condiments make three pots of soup plus back up soup put away the sysco orders tray up the panini display stock up the reach in refrigerator which most of the time I do in between customers.I also asked Donald if I could not come in earlier at 6:30am if he could bring in Judith Melendez at 8:30 am to 4:30 to support the morning rush and to cover breaks for me and Raj but with any idea that I tried to put out there he kept saying no when I spoke to Kim Nesmith  about coming in a half an hour earlier she said she had to ask Donald if she could come in a half and hour earlier and he changed it for her but not for me.also as far as porters yes I did say we needed help because my main concern was that we were going to make a student or customer sick because we were touching garbage and handling food at lenfest when it was me and Alexsandra we had to change the garbage mop and sweep the floors with two workers at lenfest but at Carlton with four workers there Donald sends porters to sweep and mop and to change the garbage for them even now that lenfest has two in a half worker we still don't get that kind of help but the porters say they still have to go to Carlton  to sweep mop and change the garbage with four worker's.why are there double standards why can Kim ask to come in earlier and get supported but when I ask all I get is no any thing that I asked Donald for to help lenfest  was no .no support what so ever.Then Justine Sacks started comparing me to Kim Nesmith saying we both have the same amount of time to get the work done but we don't Kim comes in at 6:30am to 2:30 pm Monday through Friday and Marie comes in to help her at 7am or 8am  i only have one day on Monday that I was in at 6am to 4pm and the rest of the week I was in at 7am with one hour to set up until Judith comes in at 9:30 am I did not

like being compared to Kim who has more time and help after they said they were not moving me because of my work performance.at this point Mr.Bennett asked Dietrich Donald and Justine to leave the room so we could speak when they left he asked me what I wanted to do i told him I wanted to stay at lenfest  I did not do anything wrong.Mr Bennett then stated that he did not see anything wrong because they were giving me my same schedule but I told him I did not want to leave lenfest  he said I had time to think about it but still i want to stay at lenfest  when at this point Kim Nesmith said that when upper management and the managers had there meeting about me that they said the smaller unit was a right fit for me because the unit was smaller and that I did not have to walk a lot due to my foot one I did not ask for any of my injuries i feel I'm being treated unfairly and discriminated against in no way did I ask management to accommodate me due to my foot so once im removed from lenfest  i think it would be best not to work with Mr.Bartlett due to double standards with certain employees the same rules should apply to all of his units and employees i will ask Mr.Bennet to set up another meeting to see if I can be put in another retail cafe this is not the first time that I've been forced out of a unit but it is too much to write about its is unhealthy for a worker who has done nothing wrong to come in and made to feel what are they going to do next to me

Sent from AOL Mobile Mail

---

**Nilsa Ramos** <nilsarms45@gmail.com>                                    Thu, Nov 16, 2023 at 1:00 PM
To: PAUL HOLCHAK <paul.holchak@eeoc.gov>

[Quoted text hidden]



## (no subject)
1 message

**Nilsa Ramos** <nilsarms45@gmail.com>                                    Thu, Sep 9, 2021 at 3:19 PM
To: Terri Caldes <tc433@columbia.edu>

Good afternoon Terri can you send me your fax number so I can send you the letter from the hospital about the cancel appointment on September 2 2021 and the new appointment date when I receive it i will fax it to you so you can put it in my file



**(no subject)**
1 message

**Nilsa Ramos** <nilsarms45@gmail.com>
To: Terri Caldes <tc433@columbia.edu>

Sat, Sep 11, 2021 at 12:08 PM

Good afternoon Terri I need a letter as per what you said that I am going to be put on unpaid leave due to vaccine mandates thanks



**(no subject)**
1 message

**Nilsa Ramos** <nilsarms45@gmail.com>                                          Fri, Sep 24, 2021 at 2:33 PM
To: leavemanagement@columbia.edu

Good afternoon my name is Nilsa Ramos I was told by Terri Caldes to reach out to you my uni is nr2023 my email is
nilsarms45@gmail.com my phone number is 646-544-4285 I recently sent Terri Caldes  a fax of my doctor appointment
being canceled due to the storm my appointment was on September 2 2021 and was rescheduled for December 6 2021if
you can contact me I would appreciate it thank you Nilsa



## (no subject)
1 message

**Nilsa Ramos** <nilsarms45@gmail.com>                                        Mon, Sep 27, 2021 at 7:07 PM
To: bennet.battista@1199.org

Hello Mr.Bennet just giving you the up date from my conversation and email with human resources I sent a fax of my doctor note to Mrs Caldes which shows that i had an appointment on September 02 2021 and that it was canceled due to the storm on this appointment I was to ask for a allergy test a physical and x rays of my ankle that I injured at work thats flaring up also my knee i called to make another appointment with my primary doctor and the next available appointment was December 6th Mrs Caldes emailed to contact leavemanagement which I did Mrs.Hana Bloch emailed me I contacted her today 9/27/21 at 1pm the time she said she was available I told her what happen with the appointment she told me that December 6th was to long to waite even though its no fault of my own she then started to tell me that she can give me allergy doctor's contact so I can make an appointment I told her no that I will contact the hospital i go to to see what can be done im not comfortable seeing any random doctor I don't know I was told to consult with my primary care doctor on this matter I will try to reach out to them tomorrow do you want me to fax the doctor's notes to you too let me know Nilsa



## Note for the union
1 message

**Nilsa Ramos** <nilsarms45@gmail.com>                                    Wed, Feb 16, 2022 at 12:07 PM
To: Terri Caldes <tc433@columbia.edu>

Good afternoon Terri                              I spoke to the union they said they need a letter from H.R stating I was
put on unpaid leave because of the vaccine mandates from September in order for them to reactivate my medical
insurance  Nilsa



## Note for union

1 message

**Nilsa Ramos** <nilsarms45@gmail.com>                                     Fri, Feb 25, 2022 at 2:33 PM
To: Terri Caldes <tc433@columbia.edu>

Good afternoon Terri.                                        I spoke to the eligibility fund at the union I sent them the SROI report but they questioned me about the date of Oct 29 2021 they said there a gap between September to October of non payment they asked me if I had sick time and vacation days I said yes I told them that in July 2021 I had made an appointment and was given an appointment on September 02 2021  to do my yearly physical  and to ask for an allergy test for the vaccine and  xrays for my knee and ankle but on the day of my appointment there was a strom and my appointment was  canceled by the hospital  and on September 8 2021 when I spoke to you at H.R and explained  about the appointment being canceled and could not be tested for the allergy and asked you if I could do weekly testing until the problem  could be resolved  because it was not my fault the appointment was canceled and I can't control what date I was given the appointment  but you at H.R told me no and when I asked about if I could use my vacation days you told me no that I would be put on leave of absence with no pay  so now the union told me they need a letter from you at H.R stating for the gap of non payment from September  to October  when the worker comp doctor put me out that you put me on leave of absence with out pay for that gap period  so they can reactivate my medical insurance  so I can go to my appointments  thanks Nilsa



# Fw: Meeting

4 messages

**nilsarms@aol.com** <nilsarms@aol.com>
Reply-to: nilsarms@aol.com <nilsarms@aol.com>
To: nilsarms45@gmail.com <nilsarms45@gmail.com>

Wed, Mar 13, 2024 at 1:45 PM

Sent from AOL on Android

---- Forwarded Message ----
**From:** "Bennet Battista" <bennet.battista@1199.org>
**To:** "nilsarms@aol.com" <nilsarms@aol.com>
**Sent:** Thu, Jan 11, 2018 at 8:57 PM
**Subject:** Re: Meeting
Hello Nilsa,

For ease of communication I included the previous emails you sent. You have every right to choose the Delegate that will represent you and proceed with a meeting with management as you see fit.

Fraternally,
Bennet

Bennet J. Battista
Organizer, 1199SEIU
HS-3/Presbyterian-1
Columbia University Medical Center
(646) 221-0969

Sent from my iPhone

On Jan 11, 2018, at 6:33 PM, "nilsarms@aol.com" <nilsarms@aol.com> wrote:

Hello Mr.Bennett

I've been trying to reach out to you about setting up another meeting but I have not had any response from you or H.R from the time I sent out the e-mail on 12/8/18 can you please let me know how are we are going to go forward about the fact that i was forced out of lenfest.

**From:** nilsarms@aol.com
**Date:** January 9, 2018 at 2:20:52 PM EST
**To:** nilsarms@aol.com, bennet.battista@1199.org

Good After Noon

Mr.Bennett I wanted to see if we can set up a meeting so that I can instead of going to the new cafe at uris if I can be placed in another retail cafe I think it's really unfair on how I'm being treated I feel discriminated against i did not do anything wrong and my feeling are not even being considered . This is not the first time I've been forced out of a unit and at the time Mr.Evans was the organizer and was suppose to do an investigation on my senority.I was placed in John Jay were i injured my knee and shoulder there too much to write about after that I was placed in Carlton Kim and Dietrich in November of 2014 asked me if I can cover for Jeannette the head person there because she was leaving to work in the mail room services in which Mr.Bartlett was the Manager at Carlton every week he was having a meeting with me H.R Dietrich and Kim or Ronnie  I felt harassed to the point that I asked to go back to the unit i came from i documented each meeting for record  Dietrich at that time said I could not go back because there was only a few weeks till May when we were going on break .Then a worker at Lenfest got fired and Dietrich again asked me to do a favor to cover at Lenfest and I was left there ever since now that I want to



# (no subject)
1 message

Wed, Mar 13, 2024 at 2:30 PM

**Nilsa Ramos** <nilsarms45@gmail.com>
To: Nilsa Ramos <nilsarms45@gmail.com>

**Date:** January 9, 2018 at 2:20:52 PM EST
**To:** nilsarms@aol.com, bennet
battista@1199.org

Good After Noon

        Mr.Bennett I wanted to see if we
can set up a meeting so that I can instead of
going to the new cafe at uris if I can be placed in
another retail cafe I think it's really unfair on how
I'm being treated I feel discriminated against i
did not do anything wrong and my feeling are not
even being considered . This is not the first time
I've been forced out of a unit and at the time
Mr.Evans was the organizer and was suppose to
do an investigation on my senority.I was placed
in John Jay were i injured my knee and shoulder
there too much to write about after that I was
placed in Carlton Kim and Dietrich in November
of 2014 asked me if I can cover for Jeannette the
head person there because she was leaving to
work in the mail room services in which
Mr.Bartlett was the Manager at Carlton every
week he was having a meeting with me H.R
Dietrich and Kim or Ronnie  I felt harassed to the
point that I asked to go back to the unit i came
from i documented each meeting for record
Dietrich at that time said I could not go back
because there was only a few weeks till May
when we were going on break .Then a worker at
Lenfest got fired and Dietrich again asked me to
do a favor to cover at Lenfest and I was left there
ever since now that I want to stay at lenfest it's
an issue .it is a situation because now in my
mind I'm always going to feel like what next what
are they going to do to me next and that's not
healthy. I know you said you can do nothing
about the past but a lot was done to me and
workers who stand up for themselves get
targeted and retaliated against for speaking up
about issues in the work place I feel that's what
happen to me

**From:** nilsarms@aol.com[mailto:
nilsarms@aol.com]
**Sent:** Monday, January 8, 2018 7:06 PM
**To:** Bennet Battista
<bennet.battista@1199.org>



## Medical benefits
1 message

**Nilsa Ramos** <nilsarms45@gmail.com>                                 Tue, Mar 22, 2022 at 5:51 PM
To: Terri Caldes <tc433@columbia.edu>, Nilsa Ramos <nilsarms45@gmail.com>

Hello Terri I spoke to the union again today 3/22/22 they said they did not get any letter from you to activate my medical benefits I know when we spoke on the phone on 3/8/22 at 6:30pm that you said that you forwarded my emails to the appropriate people in order for you to make me my letter can you please send me the names and phone numbers of these appropriate people so I can have it for my records and if need be contact them

Name: Nilsa Ramos | DOB: 1/30/1971 | MRN: 1737142 | PCP: Eva Waite, MD | Legal Name: Nilsa Ramos

# Letter Details



**Mount Sinai**

**The Mount Sinai School of Medicine**
**Division of General Internal Medicine**
**Center for Advanced Medicine**

**Internal Medicine**
**Associates (IMA)**

**Located at:**
17 East 102ⁿᵈ Street
7ᵗʰ Floor
New York, NY 10029

**Mailing Address:**
Mount Sinai Medical Center
Box 1087
One Gustave L. Levy Place
New York, NY 10029

Phone: 212-659-8551
Fax: 212-831-8116

To whom this may concern,

I evaluated Nilsa Ramos on 9/28/2021 for acute arthritis of L knee. I did not evaluate her ankle, because she stated it was a work related injury being addressed at University Orthopedics of NY, Dr. Steven Touliopoulos. Because her ankle is a work related injury it must be evaluated by workers comp.

Please reach out to me if you have any questions or concerns.

Sincerely,
Shyam Sundaresh, MD

Name: Nilsa Ramos | DOB: 1/30/1971 | MRN: 1737142 | PCP: Eva Waite, MD | Legal Name: Nilsa Ramos

# Letter Details



**Mount Sinai**

**The Mount Sinai School of Medicine
Division of General Internal Medicine
Center for Advanced Medicine**

**Internal Medicine
Associates (IMA)**

**Located at:**
17 East 102nd Street
7th Floor
New York, NY 10029

**Mailing Address:**
Mount Sinai Medical Center
Box 1087
One Gustave L. Levy Place
New York, NY 10029

Phone: 212-659-8551
Fax: 212-831-8116

Nilsa Ramos
434 East 105th Street
Apt 6a
New York NY 10029
212 659 8551

September 16, 2021

To Whom It May Concern,

Nilsa Ramos was scheduled for an appointment on Thursday 9/2/2021
but it was cancelled at the last minute due to storm Ida.  She should be
excused from missing work that date.

If further information is requested, please obtain written permission.

Sincerely,

*Eva Waite*

Eva Waite, MD
License 212545

Name: Nilsa Ramos | DOB: 1/30/1971 | MRN: 1737142 | PCP: Eva Waite, MD | Legal Name: Nilsa Ramos

# Visit Details

## Appointment with Shradha Agarwal, MD

Wednesday December 08, 2021

5 E 98 CLINICAL IMMUNOLOGY (aka Allergy)
5 East 98th Street
11th Floor
New York NY 10029
212-241-0764

MyChart® licensed from Epic Systems Corporation© 1999 - 2024

Name: Nilsa Ramos | DOB: 1/30/1971 | MRN: 1737142 | PCP: Eva Waite, MD | Legal Name: Nilsa Ramos

# Visit Details

## Appointment with Eva Waite, MD

**Monday December 06, 2021**

**17 E 102ND IMA 7TH FL**
17 E 102nd St
7th floor
Box 1087
NEW YORK NY 10029
212-659-8551

MyChart® licensed from Epic Systems Corporation© 1999 - 2024



## Note for union

6 messages

---

**Nilsa Ramos** <nilsarms45@gmail.com>                                    Fri, Feb 25, 2022 at 2:33 PM
To: Terri Caldes <tc433@columbia.edu>

Good afternoon Terri.                            I spoke to the eligibility fund at the union I sent them the SROI report but
they questioned me about the date of Oct 29 2021 they said there a gap between September to October of non payment
they asked me if I had sick time and vacation days I said yes I told them that in July 2021 I had made an appointment and
was given an appointment on September 02 2021 to do my yearly physical and to ask for an allergy test for the vaccine
and xrays for my knee and ankle but on the day of my appointment there was a strom and my appointment was canceled
by the hospital and on September 8 2021 when I spoke to you at H.R and explained about the appointment being
canceled and could not be tested for the allergy and asked you if I could do weekly testing until the problem could be
resolved because it was not my fault the appointment was canceled and I can't control what date I was given the
appointment but you at H.R told me no and when I asked about if I could use my vacation days you told me no that I would
be put on leave of absence with no pay so now the union told me they need a letter from you at H.R stating for the gap of
non payment from September to October when the worker comp doctor put me out that you put me on leave of absence
with out pay for that gap period so they can reactivate my medical insurance so I can go to my appointments thanks
Nilsa

---

**Nilsa Ramos** <nilsarms45@gmail.com>                                    Mon, Mar 7, 2022 at 4:38 PM
To: Terri Caldes <tc433@columbia.edu>

[Quoted text hidden]

---

**Nilsa Ramos** <nilsarms45@gmail.com>                                    Mon, Mar 7, 2022 at 6:34 PM
To: Terri Caldes <tc433@columbia.edu>, Nilsa Ramos <nilsarms45@gmail.com>

[Quoted text hidden]

---

**Nilsa Ramos** <nilsarms45@gmail.com>                                    Mon, May 8, 2023 at 7:10 PM
To: Bennet Battista <bennet.battista@1199.org>

———— Forwarded message ————
From: **Nilsa Ramos** <nilsarms45@gmail.com>
Date: Fri, Feb 25, 2022, 2:33 PM
Subject: Note for union
To: Terri Caldes <tc433@columbia.edu>

[Quoted text hidden]

---

**Nilsa Ramos** <nilsarms45@gmail.com>                                    Thu, Nov 16, 2023 at 12:35 PM
To: PAUL HOLCHAK <paul.holchak@eeoc.gov>

———— Forwarded message ————
From: **Nilsa Ramos** <nilsarms45@gmail.com>
Date: Fri, Feb 25, 2022, 2:33 PM
Subject: Note for union
To: Terri Caldes <tc433@columbia.edu>

[Quoted text hidden]

---

**Nilsa Ramos** <nilsarms45@gmail.com>                                    Tue, Jul 16, 2024 at 3:20 PM
To: nilsarms45@aol.com



## Medical benefits
1 message

**Nilsa Ramos** <nilsarms45@gmail.com>                                      Tue, Mar 22, 2022 at 5:51 PM
To: Terri Caldes <tc433@columbia.edu>, Nilsa Ramos <nilsarms45@gmail.com>

Hello Terri I spoke to the union again today 3/22/22 they said they did not get any letter  from you to activate my  medical benefits I know when we spoke on the phone on 3/8/22 at 6:30pm that you said that you forwarded my emails to the appropriate people in order for you to make me my letter can you please send me the names and phone numbers  of these appropriate  people so I can have it for my records and if need be contact them

Att.Intake Supervisor
Fax# 212-336-3790
Or 212-336-3625

Nilsa Ramos  434 E.105st Apt 6A New York N.Y 10029  646-544-4285

I am filing a charge against my employer columbia university dining service
Uris blue java the last day i was at work was Sept.8.2021 .I told the manager
Donald Barttlet that I could not swipe in to get access into the building he asked
Me if i had been vaccinated I told him no not yet that I had an appointment on
september ,2,2021 to do my physical to ask to be tested for allergy for the vaccine
To make sure I won't have an allergic reaction and for an xray of my left ankle and my
Left knee I knew that i would have to have surgery and have to be vaccinated to do so
At no time did i refuse to be vaccinated.the manager then told me i could not be in the
Building and sent me home and told me to speak to Human Resource Terri Caldes when
I spoke to Mrs.Caldes i told her what happen about my appointment being canceled due to
The storm and that if i could do weekly testing until i could resolve the appointment issue
She told me no I asked if I could use my vacation days she said no that I would be put on leave
Of absences without pay I explained that it was not my fault that my appointment was canceled
She said no even though it was not my fault she was not willing to accommodate  me i then
called the 1199 union organizer Mr.Bennett Batista on Sept,9,2021 he told me that colombia
does not care they only want to know that you been vaccinated that all they care about nothing
else i told him that i did not say I was not going to take the vaccine but I needed to make sure i
Would not have a reaction i told him it was not only about the vaccine that i also had and to do
my physical and an xray of  my left ankle that was an work related injury acting up and my left
Knee that was hurting me  he also sent me an email saying that columbia sent out letters about
he vaccine mandates and the the union was contacting members i was never contacted verbally
By the union to tell me anything he also did not contact me verbally as for letter being sent i got
Mine late do to some of the mail boxes in my building being removed in early july and put back
Close to the End of Sept,2021 but the issue is that he did not help me I called to make  me an
appointment in july they gave me my appointment for Sept 2,2021 due to the storm it was
canceled instead of helping me nothing was done on my behalf by my union

On september 9,2021 I emailed H.R Terri Caldes to ask for her fax number to send her the proof
of the cancelation of the sept,2,2021 appointment I also sent her the letter from an urgent care
visit that i had to make on Sept,28,21 for my left ankle and left knee at which point the doctor
only took an xray of my knee and told me for my left ankle i would have to go back to the worker
comp doctor to be treated because it was unresolved injury Mrs.Caldes then emailed me saying
it sounds like i was asking for a medical exemption and told me to contact leave management
and gave me a link I sent an email to leave management as per Mrs Caldes  and i was
contacted by Hana Bloch i spoke on the phone with Mrs Bloch On
September 27,2021 at 1pm I told her about my sept 2,appointment and that my new
appointment date was in Dec 6 ,2021 for my doctor and Dec.8,2021 for the immunology

Doctor to check for allergic reaction she told me that december was too long to wait that she could recommend an allergy doctor that there all over and that she could give me phone Numbers I told her no that i would contact the hospital im with to see what i could do i told her it was not only about the allergy test that my ankle injury was acting up and my knee was hurting me she cut me off and said that my injury does not exempt me and if i don't hurry and get an appointment to do an allergy test and get vaccinated that I could face termination and thats if the letter has not been sent already

I cant help when i given an appointment this was what was available

I then made an appointment for worker comp it was for oct,29,21 and the doctor put me out on this day and order for a new xray and mri of my left ankle I fax the doctor letter to H.R Terri Caldes and confirmed that it was received she said she did and that she sent it to leave management

So to Mrs Caldes i sent over all the doctors note the sept.2,2021 appointment cancelation New doctors appointment immunology Dec 6 ,2021 my doctor Dec,8,2021 and worker comp oct 29,2021

On the date of my immunology Dec,6,2021 i got a call from the hospital leaving me a message Saying that my insurance was not going through  and I could not go to my appointment  i then called the union they told me columbia stop paying into my benefit I emailed Terri Caldes told me because i was on unpaid leave to contact the union i contacted the union again they told me columbia stop paying  on sept 30,2021 i told the union I was out on workers comp they said they needed an SROI report I did not get a report until February the fax went to the union on Feb 15,2022 I called on Feb,16,2022 to confirm they received the report they said they did I asked how long it would take to reactivate my benefit because i need to reschedule my missed appointment and really needed my left knee to be recheck the union worker asked me between september through the date worker comp put me out how was I paid they asked me if i had sick day or vacation days I told them yes i had both so they asked why i was not paid I told them That human resource Terri Caldes put me on unpaid leave of absence due to vaccine mandate And would not work with me even though it was no fault of my own my appointment was canceled due to the storm that took place on Sept,1,21 my app.was on sept,2,2021 due to flooding in the city she was not willing to accommodate me or allow me to do weekly testing So the union said that they needed a letter from Mrs Caldes stating that she put me on unpaid Leave of absence from sept to oct I emailed her on Feb 16 ,2022 telling her about the letter the union needed from her she did not respond I emailed her again on Feb 25,2022 on this day i got a auto reply saying she would be out of the office until March 7 2022 i resent the the email again on march 7 I did not get a response again i then called her on March 8,22 she picked up I spoke to her about the email I sent her she said she got it and that she had forwarded my email to the Appropriate people in order to see what she needed to do in order for me to get my letter but she never responded that through email and I don't know who these appropriate people are

I feel this is personnel i am a 51 year old hispanic women who been working at columbia

Since 1999 and been through alot here not only with human resources but with upper
management and some manager not only have i been targeted and retaliated against
For speaking up about issues in the work place not only has my seniority been over look
Not only did I get injured and was treated indifferently
Not only was I removed from a unit that I didn't want to leave to be replaced by a male worker
And there more but list is too long i just wanted to let you some issue so that you can
understand why im here at this point


now they want to use a vaccine mandate against me for an appointment that was canceled
through no fault of my own i feel that im being bullied they will try to use anything to terminate
Me every day i would have to go to work and wonder what are they going to try to do to me next
Very unhealthy and stressful i was looking up my name at the columbia directory and my name
was not even showing up ive been on worker comp before and my name was always listed they
only take you off if your no longer an employee so i need to know whats going on so i can take
the appropriate action

There is another female hispanic worker who is also of age who i asked to be a witness in one
of my meeting that is also being treated the same as me




Nilsa Ramos   03,12,2022   inquiry number 520202105186

# Note for the union   Add label



N  Nilsa Ramos 2/16/2022
to Terri ⌄

Good afternoon Terri
I spoke to the union they said they need a
letter from H.R stating I was put on unpaid leave
because of the vaccine mandates from
September in order for them to reactivate my
medical insurance  Nilsa

N  Nilsa Ramos May 8
to Bennet ⌄

Show quoted text

Reply    Reply all    Forward



*...move forward with John Jay reforms*

...require more com-
...tion and thought-

...as oven, which
...may contributed to
...ures up to 25 de-
...at the serving stations,
...ed off after complaints
...workers and a protest
...by the Student-Worker

because of SWS prom-
said.

"It took you assistance to
make a difference in ourselves
in John Jay," the worker said.
"Why is it that it took students
to help us, when we as workers
have been asking for years and
it didn't happen?"

The worker said that when
her co-workers had asked man-

(no subject)   Add label



**Nilsa Ramos** 12/10/2021

to Terri ∨

Hello Terri I had an appointment on 12/8/21 for
the allergy test I was left a message saying that
I had no insurance and could not go yo my
appointment I gave on my doctor's notes so I
don't know what happen .what has to be done
to fix this let me know Nilsa

**Nilsa Ramos** May 8

to Bennet ∨

Show quoted text





Reply    Reply all    Forward



**Proskauer》》** Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

April 19, 2024

Evandro C. Gigante
Member of the Firm

d +1.212.969.3132
f 212.969.2900
egigante@proskauer.com
www.proskauer.com

Mr. Paul Holchak
Enforcement Supervisor
U.S. Equal Employment Opportunity Commission
33 Whitehall Street
New York, New York 10004

<u>**Re: Nilsa Ramos v. The Trustees of Columbia University of the City of New York,
EEOC Charge No. 520-2023-04632**</u>

Dear Investigator Holchak,

We represent Respondent the Trustees of Columbia University of the City of New York
("Columbia" or the "University") in the above-referenced matter. We submit this position
statement in response to the Charge of Discrimination (the "Charge") filed by Ms. Nilsa Ramos
("Ramos").[1]

Ramos' Charge amounts to a series of conclusory and speculative assertions that the
circumstances surrounding her termination in May 2023 amounted to discrimination and
retaliation on the basis of age, disability, race and national origin. Simply put, her Charge fails to
allege facts giving rise to an inference of discrimination on the basis of any alleged protected
characteristic, let alone due to retaliation because she filed a prior EEOC Charge in April 2022.[2]
Ultimately, every action Columbia took was for legitimate non-discriminatory and non-retaliatory
reasons.

As background, Columbia implemented a COVID-19 vaccine mandate in 2021 for all of
its employees, students and faculty, which was not only designed to protect health and safety on
campus, but was also in line with New York City's Key to NYC vaccine mandate for employees
in food service, where Ramos worked. After being notified by Columbia multiples times that she
must provide proof of vaccination or make a religious or medical accommodation request by
September 1, 2021, Ramos failed to submit the required information. Accordingly, Ramos was

---

[1] This Position Statement is based upon Columbia's understanding of the facts known to date and is provided for the
limited purpose of responding to the allegations set forth by Ramos in her Charge. By submitting this Position
Statement, Respondent does not waive its right to present new or additional evidence for substance or clarification.
Respondent does not consent, and reserves the right to object, to the introduction of this Position Statement in any
administrative, judicial, or other proceeding.

[2] In her prior EEOC Charge, No. 520-2021-05186, Ramos alleged that her placement on an unpaid leave of absence
due to her failure to comply with Columbia's COVID-19 vaccine mandate amounted to unlawful discrimination on
the basis of alleged disability. The EEOC reviewed the questions of whether Columbia failed to accommodate
Ramos or discriminated against her in the application of its COVID-19 policies, and dismissed the Charge on
October 20, 2022 without making a determination on the merits. Ramos never attempted to pursue her claims in
court.

# Proskauer»

Investigator Holchak
April 19, 2024
Page 2

placed on an unpaid leave of absence on September 8, 2021 for failing to comply with the vaccine mandate, and only after being suspended did Ramos inform Columbia that she was planning to seek a medical exemption from the mandate. After she submitted documents that purported to request an accommodation, Columbia considered the documentation and found no support for an exemption from the mandate. Ramos was informed of this decision and of her right to provide more information if she wished to have the denial reconsidered. In November 2021, unrelated to any request for accommodation from the vaccine mandate, Ramos sent Columbia a doctor's note indicating that due to an ankle injury she suffered in 2015, she was fully disabled and unable to work as of October 29, 2021. As a result, the University placed Ramos on a medical leave of absence as of October 29.

While Ramos was out on leave in December 2021, she contacted Columbia's Human Resources department about an alleged lapse in her medical coverage. Caldes promptly responded to Ramos to inform her that her union, 1199 SEIU, administers her insurance benefits, and directed her to consult with a union representative regarding her coverage. In late February and March 2022, Ramos again contacted Caldes, claiming that the union requested a letter explaining why Ramos was put on a leave of absence without pay from the University. Ramos' Charge utterly speculates, with no basis in fact, that the provision of a letter was necessary to reactivate her medical coverage, and that *if* her coverage reactivated, she *could have* returned to work sooner. Importantly, the union *never* reached out to Columbia about any such letter, and Ramos did not clearly articulate in her correspondence the information Columbia supposedly needed to provide, or explain why or how a letter would be necessary to reactivate Ramos' union-provided medical benefits. Ramos remained on leave for the next year, and did not follow up regarding any changes to her return-to-work status – which at that point was undetermined.

At the beginning of May 2023, Columbia determined that Ramos had exhausted the contractual 18-month leave period for illness/injury specified under the 1199 SEIU CBA. *In fact*, this leave was extended by approximately 1.5 months, but Ramos at no point reached out about whether she could return to work with or without reasonable accommodation, or if she remained fully disabled. In addition, Ramos never indicated that she had become compliant with Columbia's vaccine mandate, which at that point remained in effect at the University.

Based on these facts, which are set forth in detail below, Ramos cannot possibly show that she was subjected to any discrimination or retaliation, and thus her Charge should be dismissed for lack of probable cause.

## I.    RELEVANT FACTUAL BACKGROUND

### A.    Columbia is an Equal Opportunity Employer

Columbia University is an academic and research institution that is one of the largest employers in New York City. Columbia is also an equal opportunity employer that is committed to fostering a professional work environment in which all individuals are treated with respect and dignity. In pursuit of this commitment, Columbia maintains rigorous policies promoting equal

Proskauer»

Investigator Holchak
April 19, 2024
Page 3

employment opportunity and a work environment that is free of unlawful discrimination, harassment, and retaliation.

Among other things, Columbia maintains EOAA Policies and Procedures (the "EOAA Policy"). (*See* relevant excerpts of the EOAA policy, attached hereto as **Exhibit A**.) Pursuant to the EOAA Policy, Columbia does not discriminate against any person on the basis of race, national origin, age, disability or any other characteristic protected by law in the administration of its educational policies, admissions policies, scholarship, employment, and other University-administered programs and functions. Columbia's EOAA Policy also strictly prohibits retaliation against any individual who engages in protected activity.

**B.    Ramos' Work History at Columbia**

Ramos began working for Columbia in October of 1999 as a retail worker.  She was promoted to the title of Head Retail Service Worker in 2004, and remained in that position until her termination in May 2023.  Ramos was also a union member represented by Local 1199 SEIU, and her employment was governed by the 1199 SEIU Cafeteria Employees collective bargaining agreement. (*See*, relevant excerpts of the CBA, attached hereto as **Exhibit B.**)  In relevant part, this agreement contains a provision whereby "Leaves of absence for illness or injury will be granted for up to eighteen (18) months, or [the employee's] length of service, whichever is less." *Id.* at Article 18, Section 5.

As the Head Retail Service Worker, Ramos' job entailed directing staff, performing the duties of all 1199 positions that report to her, including serving food and assisting the manager on site, as well as performing any other duties as required or assigned. **(Exhibit C.)**

**C.    Columbia's COVID-19 Vaccine Policies**

Like nearly every employer in the City, Columbia's operations were greatly affected by the COVID-19 pandemic.  In order to bring the community back safely for the Fall 2021 semester, the University, in consultation with public health experts, developed a vaccination plan for all students, faculty, staff, and visitors.  Ramos, and all other Columbia employees, were notified in May 2021 of the mandate, and Dining Staff was again reminded via letter on August 11, 2021. **(Exhibit D.)**  The University's mandate, of course, gave employees the opportunity to request medical or religious accommodations in accordance with applicable law. *See id.*

At the same time, Columbia, and its employees, were required to comply with the Key to NYC, which required that all New York City employees who worked in indoor dining facilities, among other locations, be vaccinated against COVID-19 to protect public health and safety. Enforcement of Key to NYC began on September 13, 2021. **(Exhibit E.)**

**D.    Protocols for Ramos' Return to Campus Fall 2021**

On August 11, 2021, the University sent Ramos a letter outlining the procedures for her return to work on campus in the fall semester. **(Exhibit D.)**  That letter informed Ramos that,

Proskauer》

Investigator Holchak
April 19, 2024
Page 4

"effective **September 1, 2021**, employees must also have a COVID-19 vaccine on record," and that she could contact the Leave Management department to request an accommodation from the vaccine mandate for religious or medical reasons. Ramos failed to comply with this deadline, because she did not submit proof of vaccination, nor did she request accommodation, by that date. As a result, she was placed on unpaid leave on September 8, 2021.

On September 9, 2021, after Ramos already failed to comply with the deadline, she spoke with Terri Caldes, the Director of Human Resources for Facilities & Operations, in regards to her suspension. Ramos explained to Ms. Caldes that she scheduled an appointment for September 2 to get tested for allergies to the COVID-19 vaccine, but that her appointment was cancelled due to Hurricane Ida. Ramos also told Ms. Caldes that she would be applying for a medical exemption from the mandate, despite already missing the deadline and despite not actually articulating any medical basis for an accommodation. Ms. Caldes told Ramos to send an email to the University's Leave Management office to obtain the forms for making such a request.

Ramos was then contacted by Hana Bloch, Director of Columbia's Leave Management Program and they spoke on September 27, 2021. Ramos explained that she previously had an appointment scheduled for September 2, 2021 to have an allergy test for the vaccine and x-rays to her knee and ankle based on a previous work injury. However, she was unable to attend due to the hurricane. Ms. Bloch informed Ramos that a cancelled medical appointment is not sufficient for an exemption and that she would have to provide medical documentation substantiating her need for an accommodation from the COVID-19 vaccine. Ramos told Ms. Bloch that her appointment with her allergist was rescheduled for December 6, 2021 and, of course, Ms. Bloch informed Ramos that waiting until December 6 was too long, given that the deadline for compliance was September 1. Ms. Bloch then offered Ramos assistance finding an allergist that she could see sooner, but Ramos turned down this offer.

Ramos then contacted a member of Human Resources, Kellie Brown, on September 27, 2021. (**Exhibit F.**) Ramos explained she had an allergist appointment scheduled for September 2, 2021 that was cancelled due to the hurricane and that she had rescheduled the appointment for December 6, 2021. Ms. Brown informed Ramos that she needed to follow the University's medical exemption process as explained to her by Ms. Caldes in late September, and as set forth in the letter sent to Ramos on August 11, 2021.

On October 6, 2021, Ramos faxed four pages of documents to Ms. Caldes. (*See* **Exhibits G and H.**) The faxed documents, which appeared to be simply a compilation of medical documents, consisted of: (i) one letter from Mount Sinai indicating treatment for Ramos' left knee on September 28, 2021, (ii) an appointment notification from a clinical immunologist indicating an appointment for December 08, 2021, (iii) a prescription for physical therapy for left knee arthritis dated September 28, 2021, and (iv) an appointment reminder indicating Ramos was scheduled to see an orthopedist on October 27, 2021. (**Exhibit H.**)

On the same day she received the faxed medical documents, Ms. Caldes forwarded the documentation to Ms. Bloch. Ms. Caldes informed Ramos that as of October 6, 2021, Ramos had not requested a medical accommodation from the vaccine mandate, despite having been told by

Proskauer≫

Investigator Holchak
April 19, 2024
Page 5

multiple Columbia employees about the process for requesting an accommodation. Notably, Ramos never filled out the paperwork or made any formal request for an accommodation. Nevertheless, the University gave Ramos the benefit of the doubt and considered Ramos' documentation as a request for accommodation from the vaccine mandate. The panel that considered such requests reviewed the submission and determined that Ramos did not meet the criteria for an exemption from the COVID-19 vaccine mandate. (**Exhibit I.**) The results of their determination were outlined in a letter sent to Ramos on October 11, 2021, and that letter stated that Ramos could submit additional documentation along with an exemption request.

On November 5, 2021, Ramos faxed in another note from a doctor to Ms. Caldes. (**Exhibit J.**) However, this doctor's note had nothing to do with any medical issues pertaining to the COVID-19 vaccine. Instead, this note stated that Ramos was completely disabled from working as of October 29, 2021 due to a left ankle injury that she sustained in 2015. As a result of this letter, Columbia switched Ramos' leave status to a medical leave of absence, and stopped processing any further actions on her failure to comply with the COVID-19 vaccine mandate.

**E.      Ramos Remains On Medical Leave Through May 2023, And Exceeds The 18-Month Contractual Leave Period Set Forth Under The 1199 SEIU CBA**

While Ramos was out on medical leave, she alleges that her doctor's office called her on December 8, 2021 to inform her that her insurance coverage was no longer in effect. Ramos subsequently contacted Columbia's Human Resources department with questions about her coverage. However, employees represented by the 1199 SEIU receive their insurance coverage through the union. Ms. Caldes responded to Ramos and informed her that 1199 administers her insurance benefits and referred her to Mr. Bennet Batista at 1199, a union representative who could assist Ramos with her benefits questions.

After Ramos allegedly got in touch with 1199 SEIU, she claims in a message sent to Ms. Caldes on February 25, 2022 that the union required a letter from Columbia to reactivate her medical insurance. Notably, this message did not indicate to whom she specifically spoke at the union, when she spoke with them, the specifics of the purported request or how the provision of a letter by Columbia would enable her benefits to be reactivated. Later, in early March 2022, Ramos contacted Ms. Caldes asking for the letter. Ms. Caldes notified Ramos over the phone that she forwarded Ramos' request to the appropriate departments at Columbia that could help determine whether the University could even consider this request. Notably, at no point while Ramos was on leave did 1199 SEIU reach out to Columbia about any purported letter. Ultimately, with little clarity from Ramos or the union on what the letter allegedly needed to contain and what effect, if any, a letter would have on her benefits, Columbia did not complete Ramos' request.

Ramos continued to take leave for the next year without any indication provided to Columbia about when she might return to work, and/or whether she would need any accommodations to do so. In early April 2023, Columbia reviewed Ramos' employment status and determined that she had exhausted the 18-month contractual leave period specified in the 1199 SEIU CBA. (**Exhibit B**, at Article 18, Section 5.) Specifically, since Ramos had been out on leave due to illness or injury since mid-September 2021, she exhausted her leave in mid-March 2023.

Proskauer》

Investigator Holchak
April 19, 2024
Page 6

In addition, based on the most recent medical documentation the University had on file for Ramos, she was fully disabled as of October 2021, with no specified return-to-work date. By the time her leave was exhausted, Ramos had provided Columbia with *no* updated information about whether she could return to work with or without reasonable accommodation, or whether she had become compliant with the University's vaccine mandate, which was still in effect.[3] Notwithstanding, Columbia extended this period by nearly 1.5 months, in an effort to allow Ramos to come forward with updated information about her return-to-work and vaccination status. Ramos failed to do so. Accordingly, the University proceeded to close out Ramos' employment, and her release from employment was memorialized in a letter sent to Ramos on May 5, 2023. (**Exhibit K**.)

Ramos challenged this decision in a grievance hearing brought by her union on June 5, 2023, which was heard before Idina Gorman, the University's Executive Director of Labor and Employee Relations. Ms. Gorman summarized her findings in a determination letter dated June 15, 2023. (**Exhibit L.**) According to the determination letter, Ramos explained during the grievance hearing that she "remain[ed] physically unable to return to work," but "hope[d]" she could return by fall 2023 – which only confirmed the fact that as of Spring 2023 (when her employment ended) Ramos was physically unable to work. While Ramos articulated this information to Columbia during the grievance hearing, she had not once sought to relay it to Columbia before her leave was exhausted. After reviewing the evidence presented at the hearing, Ms. Gorman concluded that the University did not violate the CBA, specifically writing, "The Grievant's belief that she would have been able to return to work if she did not have a lapse in coverage does not change the eighteen (18) month leave of absence limitation under the Contract." Ms. Gorman further found that the union failed to come forth with evidence suggesting that Ramos' release was a disciplinary action, as opposed to simple adherence to contractual language. *Id.*

## II.    RAMOS' CHARGE SHOULD BE DISMISSED

As described below, Ramos' claims of discrimination and retaliation under Title VII, the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and applicable state law are without merit and should be dismissed in their entirety.

### A.    Ramos Cannot Establish Discrimination on the Basis of Age, Race, National Origin or Disability

To assert a *prima facie* case of employment discrimination, Ramos has the burden of establishing that: (i) she was a member of a protected class; (ii) she was competent to perform the essential functions of the job in question (with or without reasonable accommodation for purposes of her disability claim); (iii) she suffered an adverse employment action; and (iv) the adverse action occurred under circumstances giving rise to an inference of discrimination. If the employee

---

[3] Specifically, the University's vaccine mandate remained in effect until May 11, 2023, in accordance with the planned ending of the COVID-19 national public health emergency. *See* https://provost.columbia.edu/news/spring-2023-update-covid-19-university-guidance.

# Proskauer》

successfully makes out a *prima facie* case, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the employment action. If the employer is able to do so, the presumption dissipates and the plaintiff must demonstrate that the employer's proffered reason was merely a pretext for discrimination. *Falso v. SPG Direct*, 353 F. App'x 662, 663 (2d Cir. 2009); *Camarda v. Selover*, 673 F. App'x 26, 28 (2d Cir. 2016).

Ramos cannot establish the second, third or fourth prongs to make out her *prima facie* case. First, Ramos cannot show that, at the time she was released from her position on May 5, 2023, she was otherwise qualified to perform the essential functions of her position as Head Retail Service Worker, with or without reasonable accommodation. On a discrimination claim, whether an employee is "otherwise qualified" is reviewed at the time of the alleged adverse employment action (e.g., at termination). *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016); *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 248 (E.D.N.Y. 2015) (holding that employee failed to allege that he was qualified for his position at the time he was terminated on a NYSHRL claim). Here, Ramos was not qualified *not only* because she remained non-compliant with Columbia's vaccine mandate, but because she never indicated to Columbia that she could return to work with or without reasonable accommodation. At the time of her termination, Columbia's records showed that Ramos was totally disabled from working. Indeed, in her own words, Ramos stated at the grievance hearing following her separation that she remained "physically unable" to return to work as of June 2023, let alone as of May 2023. (**Exhibit L**.) *Dansler-Hill v. Rochester Inst. of Tech.*, 764 F. Supp. 2d 577, 583 (W.D.N.Y. 2011) ("Common sense and well-settled law dictate that a person who is on disability leave because he is disabled from performing his job is not 'otherwise qualified' to perform its essential functions, and therefore cannot establish a claim of disability-based discrimination.").

Second, to the extent Ramos claims that the alleged failure to provide a letter to her union constituted an "adverse employment action," her claim also fails on the third prong. In the Second Circuit, an adverse employment action is defined as a "materially adverse change in the terms and conditions of employment." *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 450 (S.D.N.Y. 2023) (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008)) (internal quotations omitted). Examples of a materially adverse change include, for instance, "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits [and] significantly diminished material responsibilities." *Id.* Ramos cannot show that Columbia not providing a letter to her union actually had *any* impact on the terms or conditions of her employment. Assuming *arguendo* that not providing a letter could even be considered an adverse action, Ramos' "mere subjective belief" that this amounted to discrimination on the basis of her protected characteristics is insufficient to establish a viable claim. *Diaz v. Poly Prep Day Sch.*, 2022 WL 2803259, at *7-*8 (E.D.N.Y. July 18, 2022) (dismissing claims under Title VII and NYSHRL where plaintiff failed to adequately allege that her termination occurred *because of* a discriminatory intent based on protected characteristics).

Moreover, Ramos points to no statements, comments or other evidence showing any discriminatory animus by Columbia employees, nor does she suggest that any other similarly-situated employee was treated more favorably than her. Instead, the facts show that Columbia

Proskauer»

Investigator Holchak
April 19, 2024
Page 8

attempted to assist Ramos where possible, and even extended the 1199 SEIU contractual leave period by nearly 1.5 months to give her the opportunity to develop a treatment plan with her provider and update the University concerning her ability to return to work. These circumstances simply do not support an inference of discrimination. *Martinez-Santiago v. Zurich N. Am. Ins. Co.*, No. 07 CIV. 8676 (RJH), 2010 WL 184450, at *10 (S.D.N.Y. Jan. 20, 2010) (no inference of discrimination where there was no evidence of discriminatory comments, and decision-maker, among other things, extended plaintiff's maternity leave).

Even if Ramos could make out her *prima facie* case – which she cannot – Columbia had legitimate, non-discriminatory reasons for releasing her from employment. Namely, Ramos exhausted the contractual leave limit allowed by the CBA, and, based on the documentation Columbia had on file at that point, Ramos remained non-compliant with the vaccine mandate and there was no indication that she could return to work and fulfill the essential functions of her position. Ramos does not put forth any evidence of pretext. Therefore, her discrimination claim must fail.

**B.      Ramos Cannot Establish That She Was Retaliated Against By Columbia**

Ramos claims that Columbia not sending a letter to her union and her termination from employment were actions taken in retaliation for having filed an EEOC Charge in spring 2022, Charge No. 520-2021-05186. To establish a *prima facie* case of retaliation under the ADA, Title VII, ADEA, and state law, Ramos must present evidence demonstrating: "(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013) (citing *Feingold v. N.Y.*, 366 F.3d 138, 156 (2d Cir. 2004)). The burden then shifts to defendant to show it had a legitimate, non-retaliatory reason for the adverse employment action. *Sclafani v. PC Richard & Son*, 668 F. Supp. 2d 423, 444 (E.D.N.Y. 2009). If the defendant is able to meet this burden, the claimant must show that the reasons put forth by the defendant are pretextual. *Id.*

Ramos' claim based on her request that Columbia prepare a letter to her union must fail because she cannot show that this was an employment action disadvantaging her, as described above. Ramos' Charge is full of rank speculation that the provision of a letter to her union *would have* allowed her medical coverage to be reactivated, and that this *would have in turn* led her to "return[] to work sooner." (Charge, at p. 2.) This conjectural reasoning cannot be used to support the claim that Ramos was subject to a materially adverse employment action. *Evans-Gadsden v. Bernstein Litowitz Berger & Grossman, LLP*, 491 F. Supp. 2d 386, 400 (S.D.N.Y. 2007), aff'd sub nom. *Gadsden v. Bernstein Litowitz Berger & Grossman*, 323 F. App'x 59 (2d Cir. 2009) (holding that plaintiff's "largely conclusory and speculative allegations" about her colleagues purportedly sabotaging her work did not rise to level of adverse employment action).

In addition, Ramos' retaliation claim based on her termination fails because she cannot establish the existence of a causal connection. Indeed, Ramos offers no non-conclusory evidence that she was released *because* she filed an administrative charge. Evidence of temporal proximity

Proskauer»

Investigator Holchak
April 19, 2024
Page 9

may be used to show a causal connection for a retaliation claim only where the timing is "very close." *Meyer v. Shulkin*, 722 Fed. App'x 26, 28 (2d Cir. 2018) (summary order) (internal citation omitted). That is simply not the case here. Ramos was released on May 5, 2023, *over one year* after she filed her initial EEOC Charge in April 2022. Courts have held that much shorter periods of time did not support the existence of a causal connection. *See, e.g., Baldwin v. Goddard Riverside Cmty. Ctr.*, 53 F. Supp. 3d 655, 672 (S.D.N.Y. 2014), *aff'd*, 615 F. App'x 704 (2d Cir. 2015) (five month gap insufficient to establish causal connection); *Graham v. Three Vill. Cent. Sch. Dist.*, No. 11-CV-5182, 2013 WL 5445736, at *23 (E.D.N.Y. Sept. 30, 2013) (four months insufficient).

Finally, Columbia had a legitimate, non-retaliatory reason to release Ramos – she exhausted the contractual 18-month leave period specified in the 1199 SEIU CBA, at a time when there was no indication she could even return to work with or without accommodation. With no evidence that this legitimate reason is pretextual – as opposed to the natural conclusion of her employment absent any indication by Ramos of an intent to return to work with or without accommodation – Ramos' claim must be dismissed.

## III.    CONCLUSION

For the foregoing reasons, Ramos' unsupported accusations of discriminatory and retaliatory treatment are meritless and the Charge should be dismissed in its entirety.

Should the EEOC have any questions or require additional information, please do not hesitate to contact the undersigned counsel. Should Ramos submit any additional information in support of her claims, we request the opportunity to review that information and respond before a determination is made.

Respectfully submitted,

*Evandro C. Gigante*
Evandro C. Gigante